1  Anton Ewing
2  3077 B Clairemont Drive #372
   San Diego, CA 92117
3  (619) 719-9640
   anton@antonewing.com
4

5  Plaintiff in Pro Per

6

7

8

9  **THE UNITED STATES FEDERAL DISTRICT COURT**

10  **SOUTHERN DISTRICT OF CALIFORNIA**

11

12
13  Anton Ewing, an individual,            )  Civil Case No. **'18 CV 2845 LAB JLB**
                      Plaintiff,           )
14                                         )  **COMPLAINT**
15          vs.                            )
                                           )
16  LeadExcel, Inc, a Pennsylvania         )  **TCPA 47 USC §227(b)(1)(A)**
17  corporation;                           )  **TCPA 47 USC §227(c)(5)**
                                           )  **CIPA PC §637.2 and §632.7**
18  Ron Taylor, an individual and officer of )
19  LeadExcel, Inc, aka Ronnell Taylor or  )
20  Ron Taylor, Jr.;                       )
                                           )
21  John Raymond Buchmiller, an            )
22  individual and officer of Attorneys Tax )
    Relief, LLC;                           )
23                                         )
24  Attorneys Tax Relief, LLC, an Illinois )
    limited liability company             )
25                                         )
              Defendants.                  )
                                           )
                                           )
                                           )

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 1

FILED

Dec 18 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ jenniferm          DEPUTY

18CV

May it please the Court, Plaintiff Anton Ewing (herein "Plaintiff" or

"Ewing"), for this complaint against Defendant LeadExcel, Inc, a Pennsylvania

corporation and its present, former and future direct and indirect parent companies,

subsidiaries, affiliates and agents (herein "LEADEXCEL"), Ron Taylor, an

individual and officer of LeadExcel, Inc (herein "Taylor") aka Ronnell Taylor or

Ton Taylor, Jr., as well as John Raymond Buchmiller, an individual and officer of

Attorneys Tax Releif, LLC (herein "Buchmiller"), and Attorneys Tax Relief, LLC,

an Illinois limited liability company (herein "ATR"), alleges as follows:

## I.   INTRODUCTION

1.      The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter*

*alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone and home

phone through the use of an ATDS is expressly alleged against Defendants

LeadExcel, Inc and its present, former and future direct and indirect parent

companies, subsidiaries, affiliates and agents, Ron Taylor, an individual and

officer of LeadExcel, Inc, John Raymond Buchmiller, an individual and an officer

of Attorneys Tax Relief, LLC and Attorneys Tax Relief, LLC.

2.      The CIPA cause of action (PC §§§632, 637.2, 632.7) filed herein for illegal

recording of the telemarketing call to Plaintiff's phone without disclosure of the

recording is alleged against Defendants LeadExcel, Inc and its present, former and

future direct and indirect parent companies, subsidiaries, affiliates and agents, Ron

18CV

Taylor, an individual and officer of LeadExcel, Inc, John Raymond Buchmiller, an individual and an officer of Attorneys Tax Relief, LLC and Attorneys Tax Relief, LLC.

3.     Nature of Action. Something is rotten in Pennsylvania and Illinois, to wit: LeadExcel, Inc, Taylor, ATR and Buchmiller, working together and in concert, have been bombarding Mr. Ewing, without his consent, with autodialed and prerecorded calls ("robocalls") as well as "live-transfer" calls using an ATDS at defined by the 9th Circuit in the *Crunch* case.. Mr. Ewing begged LEADEXCEL, Taylor and Buchmiller to stop these illegal calls, but since then, Defendant LEADEXCEL and its hired and controlled agents have robocalled Plaintiff dozens more times. Mr. Ewing brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in hopes that an injunction and damages will encourage LEADEXCEL, Taylor, ATR and Buchmiller to change their ways.

4.     LeadExcel, Taylor, ATR and Buchmiller were sued in New Mexico state court by attorney Sid Childress in case number D-101-CV-201702202 on August 3, 2017 for the exact same TCPA violations and prerecorded messages.

5.     LeadExcel and Taylor were sued in Northern District of California by attorney Todd Friedman in case number 18-CV-05750-WHA on December 14, 2018 in a TCPA class action for the exact same violations as contained in this

18CV

Complaint.

## II. PARTIES

6.     Plaintiff Anton Ewing is a citizen of California who conducts business in California, in this District.

7.     Defendant LeadExcel, Inc is a corporation organized under the laws of the State of Pennsylvania with its principal place of business at 1727 Eagle Ridge Drive Monroeville PA 15146.  LEADEXCEL does business in this District and throughout the United States.

8.     Ron Taylor is the president, CEO, Manager, shareholder, director, officer, and alter ego of LEADEXCEL.  Taylor does not respect the LEADEXCEL formalities of entity operation and therefore he is not protected by its veil.  Taylor is a citizen of Pennsylvania.

9.     John Raymond Buchmiller, is an individual, employee and agent of ATR. During 2017 and 2018, Buchmiller performed telemarketing activities by, for and on behalf of ATR and knowingly directed Taylor to set up a call center to robo-dial DNC protected numbers with a prerecorded message for tax relief.  Buchmiller owns, controls and uses phone number 312-690-4194 to engage in his scam telemarketing on behalf of his employer, ATR.  Buchmiller is a citizen of Illinois and he stated, in writing, that he is the sole owner of ATR.

10.    ATR is Buchmiller's LLC in Illinois that he uses to receive and launder his

18CV

illegal telemarketing revenues and gains.

### III. JURISDICTION AND VENUE

11.   Jurisdiction. This Court has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over the Plaintiffs' claim arising under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Civil Code §1770(a)(22)(A),  and California Invasion of Privacy Act, Penal Code §637.2, §632.7 because those claims:

     a.  arises from the same nucleus of operative fact, i.e., Defendant's telemarketing robocalls to Plaintiff;

     b.  adds little complexity to the case; and

     c.  relies on the same nucleus of facts, so it's unlikely to predominate over the TCPA claims.

12.   Personal Jurisdiction. This Court has personal jurisdiction over LEADEXCEL because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, LEADEXCEL made illegal telemarketing robocalls to Mr. Ewing, while he was in California.   Taylor, who is the officer, director, member and manager of LEADEXCEL, has also subjected himself to personal jurisdiction in California because he is running said criminal

18CV

operation. It is a crime to violate 47 USC §501 by violating 47 USC §227(b).

Taylor, through is corporation LeadExcel, initiated the primary telemarketing calls

to Plaintiff and then sold, transferred and provided the lead to the Buchmiller and

ATR in a knowingly illegal manner. California Civil Code §1770(a)(22)(A)

expressly prohibits the prerecorded messages that Buchmiller and Taylor sent to

Plaintiff.

13.     Plaintiff was called four times beginning on or about August 3, 2017, from

813-489-9986, a number owned, used and controlled by Taylor and LeadExcel,

with a prerecorded message that stated "*Hello, this is Jason with the Federal Tax

Resolution Center, your business has been flagged for federal tax forgiveness…*"

and then "Justin" came on the line and introduced himself as being with "tax relief

center." After many personal questions were asked and answered, Justin

transferred the call to Attorneys Tax Relief, LLC.

14.     Plaintiff received another robo call with a prerecorded message from "tax

resolution center" and then Kim came on the line. Kim further transferred the call

to "Tax Relief Center." Kim's call came in from 619-828-4029. There was no

warning that the call was recorded. Kim introduced Kelly Valez (last name is

approximate sound) from Attorneys Tax Relief. Kelly said that Kim was the

"marketing company" and Plaintiff asked what the relationship was and Kelly said

that Attorneys Tax Relief hired the initiator of the call. Kelly then sent an

unconsented text to Plaintiff's cell phone. The text that Kelly sent said "attorneystaxrelief.com" which came form 312-690-4219 on August 3, 2107. Plaintiff did not give permission to send this text. This all happened on or about August 3, 2017.

15. On or about October 5, 2017, Ron Taylor sent Plaintiff a proposed zero dollar settlement contract wherein he offer to hand over the name of the lead source that Taylor hired to conduct his illegal telemarketing campaign in exchange for letting Taylor and Buchmiller go. Plaintiff did not agree to such a bogus and unacceptable offer. Plaintiff thought that Taylor must be under the influence of some powerful drug or that Taylor had serious mental issues. Taylor send his email from ron@leadexcel.com.

16. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdiction analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205 (citing Panavision, 141 F.3d at 1320). Due process requires that Defendants must have minimum contacts with the forum such that the assertion of jurisdiction in that

18CV

forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

17.     There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). "For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts,' that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)) (internal citations omitted).  To establish specific jurisdiction, Plaintiff must show: "(1) [t]he non-resident defendant . . . purposefully direct[ed] [its] activities or consummate[d] some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avail[ed] [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* at 802.  At least two courts in the 9th have found specific jurisdiction in circumstances similar to this case. One court found personal

18CV

jurisdiction where the out-of-state defendant sent numerous unsolicited fax advertisements to a California-based plaintiff. *Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *2, 8-10 (N.D. Cal. Jan. 5, 2009). Another court found personal jurisdiction where the defendant operated a website that the California-plaintiff used, called and emailed the plaintiff numerous times, and the plaintiff's claims arose out of those contacts. *Heidorn v. BDD Mktg. & Mfg. Co., LLC*, No. C-13-00229 JCS, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013). *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *4-7 (N.D. Cal. Apr. 18, 2016)

18. <u>Venue.</u> Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims occurred in this District and because Defendant Buchmiller resides in, i.e., is subject to personal jurisdiction in, this District.  Moreover, LEADEXCEL is not registered with the California Secretary of State but does substantial business in this District. LEADEXCEL has purposefully directed its activities to California and advertises that it does business in California on its web page at www.leadexcel.com.

## IV. TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

19.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

18CV

20.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

21.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

22.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

23.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

24.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

25.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded

18CV

telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

26.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

27.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

28.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

29.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

30.    The 9th Circuit has defined an ATDS as follows: "we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."

31.    Senator Fritz Hollings complained, "[c]omputerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings). Recipients deemed that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance

and a greater invasion of privacy than calls placed by 'live' persons." S. Rep. No. 102-178, at 4.

32.   The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).  The Federal Communications Commission ("FCC")— which has authority to implement the TCPA's provisions, *see* 47 U.S.C. § 227(b)(2)— has stated that a plaintiff, to establish a TCPA violation, "need only show that [the Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).  Because the Defendants have violated multiple subsections of 47 U.S.C. §227, including but not limited to 47 U.S.C. §227(b)(1)(A) and §227(c), then Defendants, and each of them, have committed the criminal violation of 47 U.S.C. §501.

33.   "[P]rior express consent is an affirmative defense, not an element of the claim," meaning a plaintiff "need not plead that he did not give his prior express consent." *Manfred v. Bennett Law, PLLC*, No. 12–CV–61548, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012).  Rather, "[t]he only thing [a] [p]laintiff must plead to establish a violation of the TCPA is that the [d]efendants left voicemail messages at a number assigned to a cellular telephone service using an automatic

dialing system or an artificial or pre-recorded voice." Id. (denying motion to dismiss for failure to state a claim where the plaintiff alleged "that [the] [d]efendants used an Automatic Telephone Dialing System or an artificial or pre-recorded voice to place the telephone calls to [the] [p]laintiff's cellular phone.").

34.     Plaintiff Ewing alleges that Defendants Taylor, ATR, Buchmiller and LeadExcel placed repeated automated telephone calls to Plaintiff Ewing's cell phone (619-719-9640) from thier phones and that the calls exhibited signs of being made with an Automated Telephone Dialing System, including repeated telemarketing calls to Plaintiff Ewing within a period of time in August 2017 and the presence of a pause or click (which is proven by the recording), which is commonly associated with an Automated Telephone Dialing System (ATDS). Those allegations are true and are sufficient to establish the elements of a TCPA claim.  Defendant LEADEXCEL's telemarketing agent also admitted on the call that they used an ATDS to initiate the dialing of the calls to Plaintiff Ewing.

35.     ABC, Inc (a Doe Defendant to be named after discovery reveals the same) that was hired by LEADEXCEL and LEADEXCEL to knowingly and intentionally make robo-dialed calls to Plaintiff Ewing with a pre-recorded voice message that was used for telemarketing purposes between June 30, 2017 and December 18, 2018.  ABC, Inc has subsequently made illegal telemarketing calls to Ewing and discovery may very well lead to adding ABC, Inc as a defendant herein.

18CV

36.     California Civil Code section 1770(a)(22)(A) prohibits prerecorded telemarketing messages without advance written consent and Plaintiff provided no such consent.

37.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for its provisions limiting junk-fax transmissions.  A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered--and routing a call to voicemail counts as answering the call.  An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012)*

38.     As the Court unanimously held in *Haines v. Kerner*, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id., at 520-521, quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." *Estelle v. Gamble* (1976) 429 U.S. 97, 106 [97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261].

## V. STANDING

39.     The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard reviewing pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and pro se pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

40.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    A. A valid injury in fact;

    B. which is traceable to the conduct of Defendants;

    C. and is likely to be redressed by a favorable judicial decision.  See,

        *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders*

        *of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in

        *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all

        three prongs above.

18CV

**The "Injury in Fact" Prong.**

41.     Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists.  In the present case, Plaintiff was called on his cellular phone at least thirteen (13) times by Defendants.  In fact, Plaintiff expressly informed Defendants to cease and desist from all future telemarketing on the very first call. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with Defendants prior to receiving the seriously harassing and annoying calls as well as the extortionate threats by Taylor and by Buchmiller (sent by Buchmiller via email).   All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14.   In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by Defendant's persistent phone calls

18CV

using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with Defendants and Plaintiff's attempt to avoid the damage by registering his number on the DNC Registry. Additionally, Plaintiff Ewing has a clear warning on each and every page of his web domain that warns offenders that if you call, you will be sued. In fact, Ewing had to remove his own phone number from his web page several years ago (please go ahead and verify this on the waybackmachine[1]) due the incessant, annoying and harassing calls by scam telemarketers like these defendants. Moreover, a simple Google search of Ewing's phone number will yield page after page of warnings that threaten a civil suit if you call. And, Ewing has sent out hundreds of emails to TCPA defense attorneys nationwide warning them that if their clients call Ewing's phone, they will be sued. Finally, Plaintiff is responsible to pay the bill on his cellular phone, and to pay the bill for the electric utility company kilowatt-hour power usage to recharge it. All of these injuries are particularized and specific to Plaintiff and will be the same injuries suffered by Plaintiff.

**The "Traceable to the Conduct of Defendants" Prong**

42.     The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendants. In the instant case, this prong is met by the fact that the calls to

---

[1] Exact copy of web page in 2015:
https://web.archive.org/web/20151109045712/http://www.antonewing.com:80/contact

18CV

Plaintiff's cellular phone and home phone (land line) were placed either by Defendants directly, or by Defendants' agent at the express direction and control of Defendants.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

43.     The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.

44.     "…[C]ourts in the Ninth Circuit have held that "allegations of nuisance and invasions of privacy in TCPA actions are concrete" injuries that establish standing.

See *Mbazomo v. ETourandtravel, Inc.*, 16-CV-2229-SB, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (E.D. Cal. Dec. 8, 2016).  In *Mbazamo*, the court held that a violation of the TCPA represents a concrete injury because "[t]he history of sustaining claims against both unwelcome intrusion into a plaintiff's seclusion and unceasing debt-collector harassment are squarely 'harm[s] that [have] traditionally been regarded as providing a basis for a lawsuit.'" Mbazomo, 2016 U.S. Dist. LEXIS 170186, 2016 WL 7165693, at *2 (quoting *Spokeo*, 136 S.Ct. at 1549-50). The court declined to follow Romero, explaining that Romero "improperly erodes the pleading standard set under Fed. R. Civ. P. 8(a) . . . . A plaintiff [need only] plausibly tie the alleged acts of the defendant to the alleged harms suffered." Id.  *Messerlian v. Rentokil N. Am., Inc.* (C.D.Cal. Dec. 15, 2016, No. CV 16-6941-GW (GJSx)) 2016 U.S.Dist.LEXIS 175224, at *7-8.

45.     "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible

18CV

injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id*.

46.    The TCPA provides a private right of action for violations of § 227(b) and the associated regulations. 47 U.S.C. § 227(b)(3). Subsection (b) prohibits calls (other than for an emergency) to a telephone number assigned to a cellphone by way of an automatic telephone dialing system ("ATDS") without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). In the Ninth Circuit, a plaintiff must show: (1) "the defendant called a cellular telephone number; (2) "using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043

18CV

(9th Cir. 2012).  A plaintiff must also be a "called party" within the definition of the TCPA. *Charkchyan v. EZ Capital*, No. 2:14-cv-03564-ODW (ASx), 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015)

47.     First, a text message and a prerecorded robotic voice message call are both a "call" for purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).  Plaintiff supports these allegations with activity logs from July 2017 to December 2018 documenting the calls (see above). This element is satisfied.

48.     Second, Plaintiff adequately pleads use of an automatic telephone dialing system ("ATDS").  The TCPA defines ATDS to mean "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The focus of the inquiry is on the equipment's *capacity* to perform this function. *See Satterfield*, 569 F.3d at 951.  "Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.* Defendants called with a prerecorded message, which, by definition requires an auto-dialer that operates without human intervention.

49.     "In proving a defendant's use of [an] ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the

PLAINTIFF'S COMPLAINT FOR VIOLATIONS UNDER TCPA - 22

18CV

defendant used without the benefit of discovery." *Charkchyan,* 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. For example, in *Charkchyan,* the plaintiff's allegations supported the use of an ATDS. *Id.* In that case, the plaintiff described the messages received "as being formatted in SMS short code, '670-76,'" and as being impersonally scripted. *Id.* This was enough to establish the defendant used an ATDS. *Id.* Similarly, in *Kramer v. Autobytel,* the plaintiff alleged sufficient facts to support a reasonable inference that the defendants used an ATDS: "[The plaintiff] described the messages from SMS short code 77893, a code registered to [a defendant]. The messages were advertisements written in an impersonal manner. [And,] [the plaintiff] had no other reason to be in contact with the Defendants." 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010). In contrast, the plaintiff in *Williams v. T-Mobile USA, Inc.* failed to plead more than "legal conclusions couched in fact" when asserting the "barrage of calls and . . . frequency and pattern of the calls provide[d] the necessary factual support." No. 15-cv-3384-JSW, 2015 U.S. Dist. LEXIS 140077, 2015 WL 5962270, at *2-3 (N.D. Cal. Oct. 14, 2015). *See also Daniels v. ComUnity Lending, Inc.*, No. 13cv488-WQH-JMA, 2014 U.S. Dist. LEXIS 1606, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (ATDS use not plausible because the allegations indicated the defendants directed calls specifically towards the plaintiff).

50.    Here, Plaintiff alleges that Defendant Taylor and Buchmiller contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, each of the calls are available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are impersonal advertisements: they do not address Plaintiff personally and they advertise Defendant's product. Third, Plaintiff declares that he has never heard of Defendants, visited any location operated by Defendants prior to the harassing and annoying calls, nor provided his cellular telephone numbers to Defendants or consented to receive calls from Defendants. Plaintiff also has had no prior business relationship with Defendants. Plaintiffs had no reason to be in contact with Defendants nor have they ever purchased any kind of product or service. Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages.

51.    Third, Plaintiff adequately pleads that the conduct was without his prior express consent. "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express *written* consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[]

telemarketing.'" *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)).  An "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1).  "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(12).  Establishing prior express consent of the called party "is an affirmative defense for which the defendant bears the burden of proof." *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3.

52.    In *Charkchyan*, the plaintiff did not give prior express consent. *Id.* There, the plaintiff claimed: "(1) he [was] the current subscriber to the cellular telephone at issue; (2) he [had] never heard of [the defendant]; (3) he [had] never visited any location operated by [the defendant]; and (4) he [had] never provided his cellular number to [the defendant], nor consented to receiving calls from [the defendant]." *Id.*  Where the defendant failed to provide any conflicting evidence, this was sufficient. *Id.*

53.    Similarly, in Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard

of [Defendants], visited any location operated by [Defendants], provided [his] cellular telephone number to [Defendants,] or consented to receive text messages from [Defendants]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants to send the prerecorded messages. Furthermore, the calls promote the sender's illegal tax relief business and fall within the FCC's definition of an advertisement and/or telemarketing. Thus, express written consent was required, and there is no evidence of such. This element is consequently satisfied.

54.     Fourth, Plaintiff sufficiently pleads that he was the "called party." To have standing under the TCPA, a plaintiff must be the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3, *4; 47 U.S.C. § 227(b)(1)(A). A telephone service subscriber is the "called party" within the meaning of the TCPA. *Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3; *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011). Here, Plaintiff declares that he was "the regular user and subscriber to the cellular phone number" that received the calls and messages.  Plaintiff is therefore the "called party." *See Charkchyan*, 2015 U.S. Dist. LEXIS 76560, 2015 WL 3660315 at *3. *Drew v. Defendants Consumer Advocacy, LLC*, No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *11-16 (N.D. Cal. Apr. 18, 2016).

# VI. FACTUAL ALLEGATIONS

## A. LeadExcel, Inc

55.    One of LEADEXCEL's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

56.    LEADEXCEL uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

57.    A third party sold leads to LEADEXCEL and Buchmiller, and LEADEXCEL is the marketing agent for Taylor.  Buchmiller knowingly advertises through LEADEXCEL.  Each Defendant knows of and in aware of each of the other Defendant's duties, responsibilities and function within the telemarketing operation.  Each Defendant is a co-conspirator with each other Defendant in this matter.  They all know each other, they all talk to eachother.  They have all designed, planned and orchestrated the telemarketing scheme and scam together.

## B. Plaintiff

58.    Plaintiff Anton Ewing is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## C. Telephone numbers 619-719-9640 and 619-987-2016

59.    A phone number beginning 619-719-9640 is registered to Mr. Ewing.

18CV

60.     619-719-9640 is on the National Do Not Call Registry.

61.     Mr. Ewing answers calls made to 619-719-9640.

62.     Mr. Ewing pays the phone bills for 619-719-9640.

**F. LEADEXCEL's Illegal Telemarketing Robocalls to Plaintiff**

63.     On August 3, 2018, a call to 619-719-9640, which is Mr. Ewing his cellular telephone, caused his cell phone to ring. Mr. Ewing picked up. The person on the other end wasn't anyone Mr. Ewing knew.  In fact, it wasn't a person at all; it was a prerecorded voice. The voice advertised tax debt relief from ATR.

64.     Plaintiff has never heard of Buchmiller, ATR, Taylor or LEADEXCEL and had not given them permission to call him, let alone with a telemarketing robocall. Mr. Ewing was surprised and frustrated to be interrupted by a prerecorded solicitation to a phone number that had long been on the National Do No Call Registry.  Previously, in July of 2018, a call to 619-719-9640 caused Mr. Ewing's cell phone to ring again.  Again it was a prerecorded voice, again advertising tax debt relief and restructuring, again from LEADEXCEL's telemarketing call center.

65.     It didn't stop there. *LEADEXCEL placed at least 5 telemarketing robocalls to Mr. Ewing.*  Calls on August 3, 2018 came from 813-489-9986 and 619-828-4049.  The agent on the phone said he was with the ATR and that he had attorneys on staff.  The agents said their names were Justin and Kim on the call.

66.     LEADEXCEL and Buchmiller are practicing law without a license through their tax debt relief scam against the IRS.  Buchmiller is not licensed to practice law in California and neither is Taylor.

67.     Most of these robocalls used a prerecorded or artificial voice, while the rest were marked by an unnatural click or pause at the beginning—signaling to Mr. Ewing that the call was placed by an ATDS rather than manually dialed by a person.

68.     More than a dozen of LEADEXCEL's telemarketing robocalls were made to Mr. Ewing while he was in California, in this District.

69.     More than a dozen of LEADEXCEL's telemarketing robocalls were made to Mr. Ewing after LEADEXCEL knew of his desire to never been solicited via telemarketing calls, which is publicly known in this District.

70.     Mr. Ewing repeatedly asked LEADEXCEL to stop calling.

71.     Due to the massive volume of robocalls made by Defendant LEADEXCEL to him, Plaintiffs' investigation into the calls and their illegal features (e.g., prerecorded voices and placement by an ATDS, as manifested by beginning with an unnatural click or pause) is ongoing.

18CV

## VII. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

72.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

73.     The foregoing acts and omissions of LEADEXCEL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to the cellular telephone numbers of Plaintiffs without prior express written consent.

74.     Buchmiller and Taylor are affiliates and agents of LEADEXCEL.

75.     Each named defendant in this matter is vicariously liable for the acts and actions of each of the other named defendants under the *Gomez* case from the US Supreme Court handed down on January 20, 2016.

76.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

77.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

78.     Plaintiff also seek a permanent injunction prohibiting LEADEXCEL, ATR and its affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

18CV

## VIII. SECOND CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Residential Telephones, 47 U.S.C. § 227(b)(1)(B))**

79.    Mr. Ewing realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

80.    The foregoing acts and omissions of LEADEXCEL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(B), by making non-emergency prerecorded telemarketing calls to the residential telephone 619-987-2016 number of Mr. Ewing without prior express written consent.

81.    Mr. Ewing is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

82.    Mr. Ewing is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

83.    Mr. Ewing also seeks a permanent injunction prohibiting LEADEXCEL, ATR and its affiliates and agents from making non-emergency prerecorded telemarketing calls to residential telephone numbers without prior express written consent of the called party.

## IX. THIRD CLAIM FOR RELIEF

**(Telemarketing Solicitations to National Do Not Call Registrants, 47 U.S.C. § 227(c))**

84.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

18CV

85.     The foregoing acts and omissions of LEADEXCEL and/or its affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. §64.1200(c)(2).

86.     Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

87.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

88.     Plaintiff also seeks a permanent injunction prohibiting LEADEXCEL, ATR and its affiliates and agents from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by LEADEXCEL, Taylor, and Buchmiller violate the TCPA, CIPA and the UCL;

18CV

C. An order enjoining Taylor, Buchmiller and LEADEXCEL and its affiliates and agents from engaging in the unlawful conduct set forth herein, including violation of 47 USC §501;

D. An award to Plaintiff of damages, as allowed by law under the TCPA, and not limited to the calls listed in the preliminary table above;

E. For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2);

F. $500 plus threefold damages for intentional or willful violation of the Do-Not-Call Registry for each and every call;

G. For punitive damages in an amount to be determined with exactness at trial herein;

H. For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

I. For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 for attorneys that have been or will be hired;

J. For an injunction prohibiting all Defendants from ever contacting Plaintiff ever again in any manner whatsoever, including spam texting, robodialing, and spam emailing;

18CV

K. $1,500 for each violation of 16 CFR §610.4(b)(iii)(B) initiating a call to a

    DNC registered number;

L. $1,500 for each violation of 47 CFR §64.1601(3)  caller ID spoofing;

M. $1,500 for each violation of 47 CFR §64.1200(d)(1) failure to provide copy

    of written do not call policy;

N. $1,500 for each violation of 47 CFR §64.1200(b)(1) failure to state name of

    business at beginning of call;

O. $1,500 for each violation of 47 USC §227(b)(1)(A)(iii) willful or knowing

    call to cellular phone;

P. $1,500 for each violation of 47 USC §227(b)(1) for using an ATDS;

Q. $1,500 for each violation of 47 USC §227(c) and (d) for calling a phone

    number on the DNC registry; and

R. For any other relief that the Court deems just and proper.

## XI. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 18, 2018

/S/ *Anton Ewing*
Anton Ewing, Plaintiff

18CV